UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE LUIS SALAZAR-FLORES,

                Petitioner,

vs.                        Case No.   2:09-cv-661-FtM-29SPC
                              Case No.   2:06-cr-072-FtM-29SPC

UNITED STATES OF AMERICA,

                Respondent.
_____

## OPINION AND ORDER

This matter comes before the Court on petitioner Jose Luis Salazar-Flores's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1-1; Cr. Doc. #201-1)[1] and his Affidavit in Support of the Section 2255 motion (Cv. Doc. #1-2; Cr. Doc. #201-2).  Two weeks later, petitioner filed a Supplement in support of his Section 2255 motion with attachments.  (Cv. Doc. #7.)  The United States filed its Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. Section 2255 (Cv. Doc. #10), and petitioner filed a Reply to the Response of the United States (Cv. Doc. #12).  For the reasons set forth below, petitioner's Section 2255 motion is denied.

_____

[1]The Court will make reference to the dockets in the instant action and in the related criminal case throughout this Opinion and Order.  The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the underlying criminal case as "Cr. Doc."

**I.**

Petitioner was initially indicted on June 1, 2006. On September 27, 2006, a federal grand jury in Fort Myers, Florida, returned a one-count Superceding Indictment (Cr. Doc. #64) against petitioner Jose Luis Salazar-Flores (petitioner or Salazar-Flores), Jose Ascencion Perez-Soto, and Arbey Medina-Flores. All defendants were charged with possession with intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine on or about May 25, 2006, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A)(viii), and 18 U.S.C. Section 2.

Petitioner attempted to plead guilty before a United States Magistrate Judge, but was unable to successfully complete the guilty plea colloquy. (Cr. Docs. #86, 129.) After a two-day jury trial, petitioner was convicted of the charge. (Cr. Doc. #113.) On March 12, 2007, petitioner was sentenced to a term of imprisonment of 188 months, followed by a term of 60 months of supervised release. (Doc. #171.)

Petitioner appealed his conviction and sentence on March 13, 2007. (Cr. Doc. #169.) On January 11, 2008, the Court of Appeals for the Eleventh Circuit affirmed. (Cr. Doc. #199); United States v. Salazar-Flores, 262 F. App'x 190 (11th Cir. 2008).

Petitioner's Motion under 28 U.S.C. Section 2255 was filed on October 5, 2009. (Cv. Doc. #1.) The motion was dated September

28, 2009, and in the absence of evidence to the contrary, the Court will presume it was delivered to prison authorities to be mailed on the same date.  <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001).  Therefore, the motion is deemed to have been filed on September 28, 2009.  The United States does not argue that petitioner's motion under 28 U.S.C. Section 2255 was untimely, and therefore has forfeited this defense.

**II.**

The Eleventh Circuit Court of Appeals summarized the pertinent facts of the case as follows:

>  Salazar-Flores was arrested after he delivered methamphetamine to an undercover Drug Enforcement Agency ("DEA") agent.  Salazar-Flores, accompanied by Jose Ascencion-Perez, drove his pickup to a prearranged meeting place at a Cracker Barrel restaurant.  Salazar-Flores indicated to the DEA agent that he was the person delivering the methamphetamine.  Salazar-Flores walked the agent to another car driven by Arbey Medina-Flores, Salazar-Flores's cousin.  Salazar-Flores opened a rear passenger door and motioned to the DEA agent that the drugs were in the back.  When the DEA agent did not see any drugs, Medina-Flores stated that the drugs were behind the cushioning of a child car seat and lifted the cushioning.  The DEA agent saw several cylindrical objects wrapped in cellophane.
>
>  Using a razor blade produced by Salazar-Flores, the DEA agent opened one of the packages and found a brown, powdery substance.  After Salazar-Flores, Medina-Flores and Ascencion-Perez were arrested, lab reports confirmed that the substance consisted of 2.144 kilograms of a methamphetamine mixture.
>
>  At his plea hearing, Salazar-Flores indicated that he wished to enter a guilty plea, but also maintained essentially that he was a drug mule and that, although he knew he was delivering drugs hidden in the child car seat, he did not know that the drug was methamphetamine.

Defense counsel expressed concern that there might not be a factual basis for a guilty plea and that his client might not want to persist in his plea.  After a recess, Salazar-Flores entered a not guilty plea.

Salazar-Flores, Medina-Flores and Ascencion-Perez were tried together.  Salazar-Flores's defense was that he was innocent because, although he suspected there might be an illegal substance in the child car seat, he did not know for sure and he did not know that the substance was methamphetamine.  Salazar-Flores called co-defendant Ascencion-Perez as a defense witness.  Ascencion-Perez testified that he and Salazar-Flores had gone to the Cracker Barrel restaurant for work and were unaware of the drugs in the child car seat.

In addition, Salazar-Flores testified on behalf of his cousin Medina-Flores.  Specifically, Salazar-Flores testified that when he met the undercover agent, he thought he was delivering the child car seat.  Salazar-Flores also testified that he did not know there were drugs in the car seat and that he thought the person to whom he was delivering the car seat would give him work in construction or painting.  The jury convicted Salazar-Flores and his co-defendants. . . .

At sentencing, Salazar-Flores argued that his statements during his plea hearing showed that he had accepted responsibility and that he was an uneducated man who had been manipulated and influenced by others.  The district court overruled Salazar-Flores's objection, finding that Salazar-Flores's later trial testimony denying liability was inconsistent with his statements at the plea hearing and indicated that Salazar-Flores did not accept responsibility. . . .

The district court stated that it considered all of Salazar-Flores's arguments and the § 3553(a) factors, but found that the only mitigating factor was Salazar-Flores's lack of a prior criminal history.  Additionally, the district court noted that Salazar-Flores was in the country illegally, was involved in the distribution of a substantial amount of methamphetamine, even if he was just a "mule," and that he had lied about his involvement.  The district court imposed a 188-month sentence.

Salazar-Flores, 262 F. App'x 190 at 191-92.  Additional facts will be set forth below as needed to address specific issues.

**III.**

Because petitioner is proceeding pro se, his pleadings are construed liberally.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Petitioner raises twelve claims of ineffective assistance of counsel, which read as follows:

> 1. Petitioner Flores's Sixth Amendment Constitutional Right in obtaining effective assistance of counsel was denied and by the deniel of counsel's effective assistant of counsel Mr. Flores was exposed to lenghty sentence where he was enhanced 2 level for obstruction of justice where counsel through ineffectiveness procured client Mr. Flores to commit perjury where he obtained 2 level increase after being convicted from jury trial.

> 2. Mr. Flores 2 level stems from information as testimony given at change of plea hearing where Mr. Flores seek to plead guilty but counsel abrogated this process where Mr. Flores was going to plead guilty and advised client Mr. Flores they would be going to trial and he would win by jury trial.

> 3. Counsel of the record O'Brien advised client Mr. Flores within the only two visitation he must not worry he would get him off.

> 4. Mr. Flores from the inception and first meeting with counsel Atttorney O'Brien instructed him he wanted to plead guilty because he was guilty he was arrested with drugs and wanted to seek getting the lowest sentence.

> 5. At not time counsel Mr. O'Brien never advised client Mr. Flores, that he could plead guilty and benefit from U.S.S.G. Safety Value provisions and as being first time offender he was eligible for safety value.

> 6. Attorney O'Brien never informed or advised client Mr. Flores he could benefit when pleading guilty to acceptance of responsibility and obtain 2-3 level decrease in his base offense level where this would

further lower his base offense score where the court would impose lower sentence.

7. Mr. Flores never comprehended what happen at his change of plea hearing' where his intention was to plea guilty and the end result cause his sentence to be enhanced for Obstruction of Justice.

8. At trial proceedings Attorney O'Brien advised client Mr. Flores to take the witness stand and testify in his own behalf further and exposed Mr. Flores to 2 level enhancement for obstruction of justice.

9. Mr. O'Brien reasured Mr. Flores after him testifying every thing was going to be okay and not to worry.

10. Mr. Flores did not understand the difference in going to trial and taking a plea agreement.

11. Mr. Flores attorney Mr. O'Brien only came to see him twice at the county jail to discuss his case.

12. After trial proceedings when the PSR was completed and presented Mr. O'Brien never objected to the PSR or never filed any Memorandum of Objection in opposition the enhancement, minor role, or any other factor that may have place the court on notice under Rule 32(f) F. R. Crim. P. moreover attorney Mr. O'Brien never attended Presentence Interview between Probation Officer and client Mr. Flores as Rule 32(c)(2) mandates.

(Cv. Doc. #1; Cr. Doc. #201, pp. 2-3.)

## A.

A district court shall hold an evidentiary hearing on claims in a habeas petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir.

2002)(internal quotations and citation omitted). However, a "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." Id. at 715; see also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008). No evidentiary hearing is necessary in this case.

**B.**

The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. (quotations and citation omitted). A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. The

Constitution compels only one general requirement: "that counsel make objectively reasonable choices."  Bobby v. Van Hook, 130 S. Ct. 13, 17 (2009).  An attorney is not ineffective for failing to raise or preserve a meritless issue.  Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

Counsel's deficient performance prejudices the defense only when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Hall v. Thomas, 611 F.3d 1259, 1283 (11th Cir. 2010)(quoting Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Moreover, "[t]he prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable."  Hall v. Thomas, 611 F.3d at 1290-91 (quoting Rhode v. Hall, 582 F.3d 1273, 1280 (11th Cir. 2009), cert. denied, 130 S. Ct. 3399 (2010)).

## C.

The Court will address all of petitioner's issues, although not in the order presented by petitioner.

**(1)   Interference With Petitioner's Right to Plead Guilty**

Several of petitioner's arguments assert, in essence, that his attorney interfered with his right to plead guilty.  In arguments 2, 4, 6, 7, and 10, petitioner asserts that his attorney provided ineffective assistance by "abrogating" petitioner's attempt to change his plea to guilty.  Petitioner asserts that he had "no chance to prevail" at a jury trial (Cv. Doc. #1, p. 7), and that, as a result of his attorney's "erroneous legal conclusion" (id., p. 6) that petitioner would prevail at a jury trial, petitioner suffered prejudice by losing a 2 to 3 level sentencing reduction for acceptance of responsibility for a guilty plea, (id., p. 3).  Petitioner further argues that his attorney had no defense to the charge brought against him, and that there was no strategy behind his attorney's decision to abrogate the guilty plea proceeding and to advise petitioner to plead not guilty.  (Id., p. 7.)  Construed liberally, petitioner's arguments are essentially that, but for his attorney's interference, petitioner would have persisted in his guilty plea, his guilty plea would have been accepted, he would have received a 2 to 3 level reduction under the Sentencing Guidelines, and he would have received a shorter sentence.  The record, however, demonstrates neither deficient performance nor prejudice.

**(a)  Guilty Plea Principles:**

The entry of a guilty plea is not a mere formality, but a critical stage of the criminal proceedings.  "A guilty plea is more than a confession which admits that the accused did various acts. It is an admission that he committed the crime charged against him. By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."  United States v. Broce, 488 U.S. 563, 570 (1989)(internal quotations and citations omitted).  For this reason, the United States Constitution requires that a guilty plea must be voluntary and the defendant must make the related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976).  To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

"Requiring that the judge assure himself of the plea's factual basis is but one of several ways the rule ensures that a guilty plea results from a voluntary and intelligent decision."  United

States v. Gomez-Gomez, 822 F.2d 1008, 1011 (11th Cir. 1987)(citation omitted).  "A defendant has no absolute right under the United States Constitution or under Fed.R.Crim.P. 11 to have his guilty plea accepted by the court."  Gomez-Gomez, 822 F.2d at 1010 (citing Santobello v. New York, 404 U.S. 257, 262 (1971); N. Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970)).  The district court's rejection of a guilty plea is governed by an abuse of discretion standard.  Id.

**(b)  Relevant Facts:**

In this case, petitioner attempted to plead guilty without a plea agreement (Cr. Doc. #63) to an offense which carried a mandatory minimum statutory penalty of ten years imprisonment up to life imprisonment.  Both the magistrate judge and defense counsel were obviously concerned that petitioner knew what he was doing and was in fact guilty of the offense charged.  Petitioner spoke no English, and testified that he went to the second grade, barely knew how to read and write, and could "somewhat" understand the Spanish interpreter but there were some words he did not understand. (Cr. Doc. #129, pp. 4-5.)  When the magistrate judge asked petitioner if he was pleading guilty because he was guilty, petitioner responded:  "Well, yes.  I am pleading guilty because I did commit a very grave mistake in allowing myself to be guided by other people."  (Id., pp. 7-8.)  After the magistrate judge summarized the charge in the Superceding Indictment, petitioner

-11-

stated he wanted to plead guilty "without knowing what it was." (Id.)  This caused the magistrate judge to inquire of defense counsel whether petitioner would be able to supply the court with a factual basis for his plea, to which counsel responded:  "Yes. His last answer is different from what I've understood it to be before.  Perhaps he doesn't quite understand what the Court is asking.  I think that he should be able to make it through the factual basis part."  (Id., p. 9.)

Later, when asked about the government's "Notice of Elements, Penalties, and Facts," petitioner stated he understood the facts and agreed with them.  (Id., pp. 19-20.)  When asked to state in his own words what made him believe he committed the charged offense, petitioner stated that he was supposed to deliver something that was in the car.  (Id., p. 21.)  Petitioner stated he showed the person, an undercover officer, the drug that was in the car.  (Id.)  Petitioner further stated that he knew there were drugs of some sort in the car, but did not know very well what type of drug it was.  (Id., pp. 21-22.)  Petitioner testified that when the undercover officer opened the package with a razor blade, petitioner "knew there was drugs, but I didn't know very well." (Id., p. 23.)  The magistrate judge then inquired:

> THE COURT: Did you know, at that time, then, that it was methamphetamine?
> THE DEFENDANT (Via Interpreter):  Yes.  They had already told me that it was that; but I did not know what that was.

THE COURT:  But you knew that the substance in all – in those five containers, or five packages, was drugs.

THE DEFENDANT (Via Interpreter):  Yes.  Yes.  But I didn't know, then, that they were very dangerous.  It was only today that I found out how dangerous they are.

(Id., pp. 23-24.)  When the magistrate judge later inquired about the opening of the package with the razor blade, petitioner testified:

THE DEFENDANT (Via Interpreter):  I knew it more specifically when the DEA agents told me what all of that was.  And I heard from the person talking about drugs, like any drug, like marijuana or stuff like that.  The things that you hear about drugs.

(Id., p. 32.)  When asked by the magistrate judge about the factual basis, defense counsel stated:

MR. O'BRIEN:  I just would like to put on the record that I think it's important to note that my client and I have talked about this on a number of occasions.  We've talked about what it would take for the government to prove him guilty at trial.  I think that there is a possible defense; however, my client does not want to go to trial, and I've had to explain to him that there's only one other option, and that's what we're doing here, today.  I have some concerns – I imagine, perhaps, the government will voice the same concerns – that we might not be able to get through this guilty plea hearing because of what he's said so far.  And I thought we were going to be able to get through it; but, at this point, I don't know if we can.

THE COURT:  Your issue, I would assume, would be the fact of the knowledge that the drugs were methamphetamine.

MR. O'BRIEN:  Correct.  And I think that that's definitely an element that the government would have to prove, and I don't know that the court can accept his plea.  And that concerns me.  But, at the same time, it's

-13-

one of those difficult situations where this particular
client doesn't like these two choices that he's presented
with; and, unfortunately, there isn't a third choice.

. . . but I do have that concern as Mr. Salazar-Flores'
attorney.

(Id., pp. 28-30.)   The government responded that petitioner had

stated he knew it was methamphetamine, so the magistrate judge

inquired of petitioner as to whether he knew the drugs were

methamphetamine as follows:

THE COURT:  Mr. Salazar-Flores, you have a right, like I
told you earlier, to enter a plea of guilty; but I have
to be sure that you are guilty of the offense before I
can recommend that your plea be accepted.  Is there
anything else that you want to tell me about your
knowledge of the drugs being methamphetamines that would
help me understand why you were guilty of the offense?
If . . . . If I don't believe that you had knowledge that
the drugs were methamphetamines, then I'm not sure that
I can recommend that your plea be accepted.

(Mr. O'Brien confers with the defendant privately.)

MR. O'BRIEN:  Your Honor Your Honor, what I'd ask the
Court to do is adjourn this matter.  My client – I don't
believe, at this point, he's going to be able to make it
through the rest of this guilty plea hearing.  And I have
my own doubts, based upon what he's saying, today, in
open court.  I'd ask the Court to allow me to meet with
him at the jail, after he's had a couple of hours to sort
of calm down and regather himself.

If I feel its appropriate that we can make it through the
guilty plea hearing, I'll ask the Court to put it back
on; but, at this point, I foresee a lot of problems for
Mr. Salazar, even if he made it through this guilty plea
hearing, with what may happen with probation, what may
happen with Mr. Haas seeking enhancements, or taking away
certain possible decreases that he may have.

(Id., p. 31.)   After the magistrate judge continued to ask clarifying questions of petitioner, defense counsel conferred privately with him and then reported that he did not think petitioner "could go through with this."  (Id., pp. 32-33.)

The magistrate judge recessed the change of plea colloquy, and agreed to re-schedule the matter if appropriate after defense counsel conferred with petitioner.  (Id., p. 33.)  The magistrate judge also solicited legal research concerning the element of knowledge.  (Id.)  The magistrate judge explained the adjournment to petitioner, and that after consulting with counsel petitioner could decide how he wanted to proceed.  Petitioner responded "[t]hat's fine."  (Id., p. 36.)

**(c)  No Ineffective Assistance of Counsel:**

To be convicted of possession with intent to distribute methamphetamine, a defendant must have knowledge that he was dealing with a controlled substance, although he need not know the particular drug involved or the quantity.[2]  Under 21 U.S.C. Section

---

[2]"[I]t is well-settled that to sustain a conviction for possession with intent to distribute a controlled substance, it need not be proved that the defendant had knowledge of the particular drug involved, as long as he knew he was dealing with a controlled substance." United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir. 1990)(citing United States v. Lewis, 676 F.2d 508, 512 (11th Cir. 1982); see also United States v. Restrepo-Granda, 575 F.2d 524, 527 (5th Cir. 1978); United States v. Zapata, 497 F.2d 95, 98 n.7 (5th Cir. 1974)).  Subjective knowledge of the quantity of a drug is "unrequired for a defendant to receive a mandatory minimum sentence under Section 841(b)(1)."   United States v.
(continued...)

802(6), "[t]he term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title [21 U.S.C. § 812]."  Pursuant to 21 U.S.C. Section 812(b)(1)-(5), whether a substance is a controlled substance is determined by a drug's potential for abuse; whether the drug has a currently accepted medical use in treatment in the United States; the degree to which the drug may lead to physical or psychological dependence; and whether there is a lack of accepted safety for use of the drug under medical supervision.

The change of plea colloquy establishes that petitioner may have lacked the requisite knowledge to be convicted for possession with intent to distribute a controlled substance under 21 U.S.C. Section 841(a)(1).  At the very least, both defense counsel and the magistrate judge were properly concerned by petitioner's answers, and defense counsel properly sought an adjournment of the change of plea proceedings for further consultation with petitioner. Petitioner's attorney did not perform deficiently when he recognized that such lack of knowledge was a possible defense. Indeed, at trial defense counsel sought a judgment of acquittal on the basis that petitioner did not know that there was a controlled substance in the vehicle.  (Cr. Doc. #135, p. 187.)  Accordingly, the Court finds that counsel did not interfere with petitioner's

---

[2](...continued)
Holmes, 838 F.2d 1175, 1178 (11th Cir. 1988).

"right" to plead guilty, and did not provide ineffective assistance by adjourning the change of plea hearing, further conferring with petitioner, and ultimately proceeding to trial.

Petitioner also claims that his attorney failed to advise him that he would receive a two or three level decrease in sentencing if his guilty plea were accepted based upon acceptance of responsibility. (Cv. Doc. #1, p. 3.) As a result, petitioner asserts that he "did not understand the difference in going to trial and taking a plea agreement." (Id.) Petitioner alleges that, having no knowledge of the English language, he failed to comprehend that he had changed his plea from guilty to not guilty. (Id., p. 6.)

Contrary to petitioner's argument, however, the record reflects that petitioner understood the ramifications of pleading guilty and of proceeding to trial. The magistrate judge at the attempted change of plea hearing was solicitous that petitioner understood these matters:

> THE COURT: If you don't understand something I'm asking you, please let me know that, and I'll try and rephrase it. If you wish to ask your attorney about something I'm asking you, please let me know that, as well, and I'll give you time to speak with your attorney.

(Cr. Doc. #129, p. 3.) Petitioner was appointed an interpreter (id., p. 2) and agreed to ask for an explanation in case he failed to understand anything that was said.

> THE DEFENDANT (Via Interpreter):  Yes.  Yes.  The only
> thing is that there are words that . . . that I hear, and
> that . . . they have a . . . I don't know what they mean.
> And that's – that's the only thing.
>
> THE COURT:  Will you tell me if you don't know what
> something means, so I can explain it to you?
>
> THE DEFENDANT (Via Interpreter):  Yes.  Yes; I will ask
> you.
>
> THE COURT:  All right.  So we'll proceed, we'll go
> forward, and you just need to tell me if there's
> something you don't understand.
>
> THE DEFENDANT (Via Interpreter):  Okay.

(<u>Id.</u>, p. 5.)  Further, petitioner demonstrated his ability to request an explanation when the need arose.  (<u>Id.</u>, pp. 5, 11.) Additionally, the magistrate judge explained in detail to petitioner the differences between pleading guilty and proceeding to trial, and petitioner affirmed that he understood this explanation.  (<u>Id.</u>, pp. 16-19.)  The record contradicts petitioner's claim that he was unaware of the sentencing possibilities attendant upon pleading guilty.

> THE COURT:  Do you understand, Mr. Salazar-Flores, the
> possible penalties, or what could happen, if you enter a
> plea of guilty to this offense?
>
> THE DEFENDANT (Via Interpreter):  Yes.

(<u>Id.</u>, p. 16.)

Petitioner's argument that counsel was responsible for the loss of acceptance of responsibility is also without foundation. At the attempted change of plea hearing the government was not satisfied with petitioner's statement of facts apart from the

knowledge issue.  (Cr. Doc. #129, pp. 25-26.)  At sentencing, the Court found that petitioner's statements during the trial of co-defendant Arbey Medina-Flores precluded a sentencing reduction for acceptance of responsibility.

> THE COURT:  All right.  The Court is going to overrule the objection for – with regard to the acceptance of responsibility.  Judge Chappell found that the defendant's attempt to plead guilty was not sufficient, and, to the extent that is inconsistent with his later testimony, certainly, his later testimony is not an acceptance of responsibility. Quite the contrary, it was a denial of any liability, or of any knowledge.

(Cr. Doc. #185, p. 16.)  Even a plea of guilty does not guarantee a reduction based upon acceptance of responsibility.  "The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999)(citation omitted).

Finally, the record establishes that petitioner gave his informed consent to the adjournment of his guilty plea proceeding and to entering a plea of not guilty.  The magistrate judge informed petitioner that she would enter a plea of not guilty on petitioner's behalf, and petitioner's attorney responded that he had no objection.  Petitioner, himself, made no comment and did not object.  It was then explained to petitioner that he could elect to proceed with his guilty plea, or else could proceed to trial.  (Cr. Doc. #129, pp. 35-36.)  Petitioner did not elect to proceed with

his guilty plea, and gave no indication that he did not understand the options before him.  Petitioner responded "that's fine" (id., p. 36), and ultimately proceeded to a jury trial.  A defendant may manifest assent to the course of a judicial proceeding even by silence.  See Howard v. United States, 580 F.2d 716, 719 (5th Cir. 1978).

The Court finds that petitioner's counsel did not provide ineffective assistance by interfering with his ability to plead guilty.  The record conclusively establishes that counsel made appropriate decisions concerning petitioner's position as to his knowledge of "drugs" in the vehicle, and that petitioner made an informed decision to proceed to trial on the basis of proper advice of counsel.

**(2)  Procurement of Petitioner's Perjury at Trial**

In arguments 1, 7, 8, and 9, petitioner asserts that his attorney provided ineffective assistance by procuring petitioner to commit perjury.  Petitioner asserts that his attorney thereby exposed him to a two-level sentence enhancement for obstruction of justice by advising him to testify "in his own behalf" (Cv. Doc. #1; Cr. Doc. #201, p. 3) when he was called as a witness for co-defendant and cousin, Arbey Medina-Flores.

The record establishes that petitioner did testify at his trial, that the district court found he had committed perjury during that testimony, and that petitioner's sentence was enhanced

for obstruction of justice based upon perjury regarding the purpose of his trip to Fort Myers and his knowledge of the existence and location of the drugs in question.  (Cr. Doc. #185, pp. 12-14, 24.)  Additionally, there can be little doubt that an attorney who advises his client to commit perjury would, at the very least, be providing ineffective assistance of counsel.  "Although counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law."  Nix v. Whiteside, 475 U.S. 157, 166 (1986).

The record affirmatively contradicts petitioner's allegation that counsel knowingly and willfully induced or procured petitioner's material false testimony.  At trial, the Court advised petitioner of his constitutional right to testify or not to testify, and gave him the evening to think about his decision.  (Cr. Doc. #183, pp. 189-91.)  Petitioner knew he had an obligation to testify truthfully if he decided to testify at all, and was advised at the attempted change of plea hearing that any false statements knowingly made by him would render him subject to prosecution for perjury.  (Cr. Doc. #129, pp. 3-4.)  The record reflects that counsel spent two hours with petitioner the evening before he would have to decide if he would testify.  (Cr. Doc. #135, p. 189.)  Defense counsel advised the Court that he did not believe petitioner was going to testify, but asked the Court to

inquire of petitioner.  (Cr. Doc. #184, p. 265.)  The Court did so, and petitioner stated he did not wish to testify.  (Id., pp. 265-66.)  After petitioner was convicted in his own trial, but before sentencing, he was called as a defense witness in the severed trial of his cousin, Arbey Medina Flores.  The Court inquired of petitioner's attorney whether petitioner agreed to testify.  Counsel stated that petitioner wanted to testify, that he understood he had an obligation to tell the truth, that counsel gave his opinion on the matter, and petitioner wanted to waive the right to remain silent and testify.  (Cr. Doc. #191, pp. 284-85.)

Petitioner then testified, among other things, that he was told to deliver a car to a person, that there were drugs in the vehicle, "[b]ut I didn't know what it was."  (Id., p. 292.)  Petitioner further testified that he was not asked to bring drugs, but was told to deliver a car.  (Id.)  Petitioner testified that he did not realize there were drugs in the car when he picked it up, and had no idea that something was not right.  (Id., p. 294.)  Petitioner testified that he did not realize there were drugs in the vehicle until the undercover agent found them.  (Id.)

Petitioner's testimony was thus inconsistent with his statements during the plea colloquy.  More importantly, there is no indication defense counsel either advised him to testify or advised him to testify falsely.  Indeed, the record reflects the contrary-that counsel advised petitioner to testify truthfully.  The Court

-22-

finds that counsel did not solicit petitioner to testify falsely, and did not provide ineffective assistance in this regard.

**(3)   Failure to Advise Regarding Possible Reduction of Sentencing for Lack of Prior Criminal History**

In argument 5, petitioner asserts that his attorney provided ineffective assistance by failing to advise him regarding a possible reduction of sentence for petitioner's lack of a prior criminal history.  Petitioner essentially argues that, as a result of counsel's failure to advise him regarding the safety valve provision of U.S.S.G. Section 5C1.2, inclusive of Section 3553 (a)(1-5), petitioner lost a mitigation in sentencing for his lack of a prior criminal history, and so received an unreasonable sentence.

Petitioner's argument fails for two reasons.  First, petitioner's allegation that counsel failed to inform him about the possible effect of prior criminal history on sentencing is affirmatively contradicted by the record.  At the attempted change of plea hearing, petitioner affirmed that his attorney had explained the sentencing guidelines to him, and that he understood that prior criminal history was a factor affecting sentencing.

> THE COURT: All right.  Did he [Mr. O'Brien] discuss with you that chart that's used, the sentencing guidelines?
> THE DEFENDANT (Via Interpreter): Yes.  All my papers, he would read them to me.
> THE COURT:  All right.  And, when he would do that, at some point did you discuss with him a chart, or a table, that told you where you might fall on the sentencing guidelines?

    THE DEFENDANT (Via Interpreter):  Yes.  As I recall, he
told me I was at Level 38.

(Cr. Doc. #129, pp. 10-11.)

    THE COURT:  So you understand that the guidelines are
something that the Court looks at – or that chart is
something that the Court looks at in figuring out the
sentence that the Court is going to  give you.

    THE DEFENDANT (Via Interpreter):  Yes.

(Id., p. 12.)

    THE COURT:  Now, the sentencing guidelines are advisory
to the Court.   Do you understand that, in that
guidelines, or that chart, that your criminal history,
your criminal background, any crimes that you committed,
would be considered in sentencing you in this case?

    THE DEFENDANT (Via Interpreter):  Yes.

(Id., p. 11.)

    Second, petitioner has failed to establish prejudice because

the Court considered his lack of a prior criminal history at

sentencing.

    THE COURT:  Frankly, the only mitigating factor of much
significance that the Court finds is your lack of any
prior criminal history.  I don't find that the factors
set forth by your attorney, for the most part, warrant
any mitigation. . . .  After considering all those
factors, it's my judgment that you be committed to the
custody of the Bureau of Prisons to be imprisoned for a
term of 188 months.

(Cr. Doc. #185, p. 24.)  Petitioner was not prejudiced because the

Court explicitly considered petitioner's lack of prior criminal

-24-

history at sentencing, and petitioner, was, in fact, sentenced at the *low* end of the guideline range. (Id., p. 26.)

As to safety-valve, petitioner was required to be truthfully debriefed by the government prior to sentencing. A defendant is eligible for the safety-valve exception only if, among other things, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." 18 U.S.C. § 3553(f)(5). The burden is on the defendant to prove that he has met all of the safety-valve factors. United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004). Petitioner never complied with this requirement. For these reasons, the Court finds that petitioner's counsel did not provide ineffective assistance.

**(4)  Failure to Visit Petitioner More Often in Jail**

In arguments 3 and 11, petitioner asserts that his attorney provided ineffective assistance by failing to visit petitioner in jail more frequently in order to discuss his case. Petitioner asserts that counsel performed deficiently by coming to see him on only two occasions at the county jail. The record affirmatively refutes this claim.

It is well-settled that counsel's brevity in consulting with a client does not, per se, constitute deficient performance:

"[T]he brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980)(citing Carbo v. United States, 581 F.2d 91 (5th Cir. 1978); Woodard v. Beto, 447 F.2d 103 (5th Cir. 1971)).  It is presumed that counsel's brevity falls within the wide range of professional conduct, provided that counsel "devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case." Id.  Brevity of time spent in consultation with counsel "is only a factor to be considered in the totality of the circumstances." Carbo v. United States, 581 F.2d 91, 93 (5th Cir. 1978)(citing Jones v. Henderson, 549 F.2d 995, 997 (5th Cir. 1977); Herring v. Estelle, 491 F.2d 125, 128 (5th Cir. 1974); Doughty v. Beto, 396 F.2d 128, 130 (5th Cir. 1968)).

The record conclusively establishes that petitioner's attorney was thoroughly familiar with the facts of the case and the applicable law.  Petitioner has presented no facts to defeat the presumption that counsel exercised reasonable professional judgment in determining when it was necessary to consult with petitioner in jail in order to raise an adequate defense.  The record establishes that counsel devoted sufficient time to insure an adequate defense, and the Court finds that counsel's performance was not deficient.  Moreover, petitioner has failed to demonstrate or even suggest that his defense was prejudiced as a result of counsel's allegedly

inadequate visits, and that a different outcome would have been likely had counsel visited petitioner more frequently in jail.

At the attempted change of plea hearing, petitioner indicated that he was satisfied that counsel spent sufficient time with him in preparing his defense.

> THE COURT:  Do you understand the charges against you?
> THE DEFENDANT (Via Interpreter):  Yes.
> THE COURT:  And you've had time to speak with your attorney about those charges?
> THE DEFENDANT (Via Interpreter):  Yes.
> THE COURT:  Are you satisfied with your attorney?
> THE DEFENDANT (Via Interpreter):  Yes.
> THE COURT:  Has he done everything you've asked him to do?
> THE DEFENDANT (Via Interpreter):  Yes.  He has gone to visit me, and he has read me the papers.

(Cr. Doc. #129, p. 7.)  Petitioner further stated that counsel had explained the seriousness of the case (id., p. 10), read all the papers to petitioner (id.), and explained the Sentencing Guidelines, (id., pp. 11-12).  During the trial counsel spent two hours with petitioner in the jail in anticipation of his trial testimony.  (Cr. Doc. #135, p. 189).  Petitioner's attorney also related at sentencing, without contradiction, that he had visited petitioner "on numerous occasions" while petitioner was in jail in both Naples and Fort Myers.  (Cr. Doc. #185, p. 19.)  Accordingly, the Court finds that counsel did not provide ineffective assistance by failing to visit petitioner more frequently in jail.

**(5)  Failure to Object to the Presentence Report**

In argument 12, petitioner asserts that his attorney provided ineffective assistance by failing to object to the presentence report.  Petitioner asserts that his attorney "never filed any Memorandum of Objection in opposition" to petitioner's sentence enhancement for obstruction of justice, and never notified the Court of any other factor which might have resulted in a mitigation of sentencing.  (Cv. Doc. #1, p. 3.)  Petitioner's argument is affirmatively contradicted by the record.

Petitioner's attorney filed a Sentencing Memorandum on February 28, 2007.  (Cr. Doc. #167.)  In his Memorandum, counsel listed a series of objections to the presentence investigation report (id., pp. 4-7), and sought a sentence outside the mandatory minimum sentence, (id., pp. 6, 8).  Counsel argued in the alternative that petitioner's sentence be reduced in light of eight mitigating factors, including petitioner's limited educational and vocational skills, and his allegedly minor role in the offense. (Id., pp. 7-8.)  Counsel further sought to enroll petitioner, at petitioner's request, in the Bureau of Prison's Residential Drug Abuse Program (RDAP), in order to reduce petitioner's chances of recidivism.  (Id., p. 9.)

Further, at sentencing petitioner's attorney sought to remove petitioner's enhancement for obstruction of justice.  (Cr. Doc. #185, p. 11.)  Counsel further objected that petitioner should

-28-

receive a sentencing reduction for acceptance of responsibility despite going to trial. (<u>Id.</u>, pp. 15-16.)  After considering counsel's objections and the 3553(a) factors, the Court imposed a sentence at the low end of the guideline range. (<u>Id.</u>, p. 26.)  The Court recommended that petitioner be allowed to participate in RDAP if he were to become eligible.  (<u>Id.</u>, p. 29.)  The Court also recommended, upon counsel's request, that petitioner be placed in a facility that is close to his family in Tampa.  (<u>Id.</u>, p. 30.) The record conclusively establishes that counsel labored diligently to reduce petitioner's sentence as far as possible, and that petitioner was not prejudiced by, but rather benefitted from, counsel's performance.

Petitioner's assertion that counsel did not attend the presentence interview is without merit because, regardless of actual attendance, petitioner's attorney was aware of the presentence report (Cr. Doc. #167, p. 2), and objected to the findings of that report both in his Memorandum (<u>id.</u>, pp. 4-7), and at sentencing.  Petitioner incorrectly states the law when he argues that counsel was required to attend the presentence interview under Fed. R. Crim. P. 32(c)(2) (Civ. Doc. #1, p. 3), which provides only that the probation officer must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview.  Because the record affirmatively contradicts petitioner's argument that counsel failed to object to

the presentence report, or to seek a mitigation in petitioner's sentencing, the Court finds that counsel did not provide ineffective assistance in these matters.

Accordingly, it is now

**ORDERED:**

1.   Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2.   The Clerk of the Court shall enter judgment accordingly, terminate any pending motions, and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE **DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment

of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004)(quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Fort Myers, Florida, this ___13th___ day of July, 2011.

_____
JOHN E. STEELE
United States District Judge



Copies:
Counsel of record
Jose Luis Salazar-Flores